# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

Nº 10-CV-06061 (JFB)(GRB)

————————————————

RODNEY JOHNSON,

Plaintiff,

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF'S DEPARTMENT, ACTING SHERIFF
MICHAEL J. SPOSATO, DEPUTY ATTORNEY ELIZABETH LOCONSOLO, SERGEANT
JOSEPH KREUTZ, LIEUTENANT BARBARA GRUNTORAD, CAPTAIN ANTHONY ZUARO,
CAPTAIN MICHAEL GOLIO, CORPORAL PATRICK MCDEVITT, AND CORRECTION
OFFICER MANNY DASILVA, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES,

Defendants.

————————————————

**MEMORANDUM AND ORDER**
September 22, 2014

————————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Rodney Johnson ("Johnson" or "plaintiff") brings this civil rights action against the County of Nassau (the "County"), the Nassau County Sheriff's Department ("NCSD"), and individual defendants Acting Sheriff Michael J. Sposato ("Sposato"), Deputy Attorney Elizabeth Loconsolo ("Loconsolo"), Sergeant Joseph Kreutz ("Kreutz"), Lieutenant Barbara Gruntorad ("Gruntorad"), Captain Anthony Zuaro ("Zuaro"), Captain Michael Golio ("Golio"), Corporal Patrick McDevitt ("McDevitt"), and Correction Officer Manny DaSilva ("DaSilva"), in their official and individual capacities. The gravamen of the complaint is that plaintiff, a correction officer in the NCSD, was harassed constantly by his co-worker DaSilva on account of plaintiff's race (plaintiff is African-American), that the other defendants (collectively, the "County defendants") did not adequately address DaSilva's behavior, and that plaintiff was retaliated against for having complained about DaSilva's behavior. Plaintiff brings the following claims under federal and state law: (1) hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); (2) retaliation under Title VII, Section 1981, Section 1983, and the NYSHRL; (3) racial discrimination by a program receiving federal financial assistance under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*

("Title VI"); (4) conspiracy under 42 U.S.C. § 1985(3) ("Section 1985(3)"); (5) failure to intervene under 42 U.S.C. § 1986 ("Section 1986"); and (6) breach of contract.

Before the Court are defendants' motions for summary judgment. For the following reasons, the motions are granted in part and denied in part. First, the Court grants summary judgment to the NCSD because the NCSD does not have a legal identity independent of the County. Second, the Court denies the summary judgment motions as to plaintiff's Title VII hostile work environment claim against the County because a reasonable jury could find not only that DaSilva subjected plaintiff to a racially abusive working environment, but also that the County was responsible for this abusive working environment by inadequately addressing plaintiff's complaints about DaSilva's conduct. Because there is a reasonable basis to impute the hostile work environment to the County, the Court also denies the County's motion for summary judgment as to the Section 1981 and Section 1983 hostile work environment claims. As for the individual defendants, the Court grants summary judgment for all individual defendants as to the hostile work environment claims because Title VII does not create individual liability; DaSilva's conduct was unrelated to his job duties, and thus did not constitute state action for purposes of Sections 1981 and 1983; and no other individual defendants had the requisite level of involvement in the creation of a hostile work environment so as to be held liable under Sections 1981 and 1983. Third, plaintiff premises his federal retaliation claims upon two adverse employment actions: (1) a transfer to a less favorable position within the NCSD, and (2) a formal reprimand. The Court concludes that plaintiff has met his minimal burden to state a *prima facie* case of retaliation with respect to both adverse

actions, and that defendant has come forward with legitimate, non-retaliatory reasons for those actions. The Court further concludes that plaintiff has raised a triable issue of fact as to whether his transfer was due to retaliation, where the County has explained that it transferred plaintiff to separate him from DaSilva but has not offered a reason for transferring DaSilva instead. As for the formal reprimand, plaintiff can point to specific evidence (the reaction of Gruntorad, his supervisor, to his complaint about his transfer, along with evidence that plaintiff had not been disciplined for similar conduct in the past) that the reprimand would not have occurred but for retaliatory animus. Accordingly, the Court denies summary judgment to the County with respect to the Title VII retaliation claim. However, the Court grants summary judgment for the County with respect to plaintiff's Section 1981 and Section 1983 retaliation claims because there is no evidence of a municipal custom or policy that caused the retaliation. In addition, the Court denies Gruntorad's motion for summary judgment as to the Section 1981 and Section 1983 retaliation claims based on evidence establishing her personal involvement in the claimed retaliation. The Court grants summary judgment to all other individual defendants with respect to these claims because there is no evidence that any other individual defendant participated in the alleged retaliation. Fourth, the Court grants summary judgment to all defendants as to plaintiff's Title VI claim due to an absence of evidence showing that the County or NCSD received federal funding. Fifth, with regard to the Section 1985(3) and Section 1986 claims, the Court grants summary judgment to all defendants on the basis of the intracorporate conspiracy doctrine. Sixth, the Court dismisses plaintiff's NYSHRL claims against the County and all

individual defendants except DaSilva based upon plaintiff's failure to file a notice of claim. Because there is evidence that DaSilva acted outside the scope of his employment in creating a hostile work environment toward plaintiff, no notice of claim was required for the NYSHRL claims against him to proceed, there is sufficient evidence from which a reasonable jury could hold him liable individually under the NYSHRL, and the Court denies his motion for summary judgment as to these claims. Seventh, and finally, the Court grants summary judgment to all defendants as to plaintiff's breach of contract claim because, under New York law, an employment handbook's anti-discrimination and anti-harassment policies may not serve as the basis for a breach of contract claim.

## I. BACKGROUND

### A. Facts

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. *See, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed, or the opposing party has not pointed to any evidence in the record to contradict it.[1]

Plaintiff is an African-American male and has worked as a Correction Officer for the NCSD since August 1993. (County 56.1 ¶¶ 1–2; DaSilva 56.1 ¶ 1.[2]) For the first twelve years of his career, plaintiff was assigned to the NCSD's Security Unit. (County 56.1 ¶ 3; DaSilva 56.1 ¶ 5.) At his request, plaintiff was reassigned from the Security Unit to the Rehabilitation Unit, the unit responsible for maintaining law libraries and schools in the County jails, on January 4, 2006. (County 56.1 ¶ 4; DaSilva 56.1 ¶ 6.) Plaintiff served as a drill instructor for the High Impact Incarceration Program ("HIIP") within the Rehabilitation Unit from January 2006 until July 2007, when the HIIP was shut down. (County 56.1 ¶ 6; DaSilva 56.1 ¶ 7.) Thereafter, plaintiff was transferred within the Rehabilitation Unit to the 832 Law Library. (County 56.1 ¶ 7; DaSilva 56.1 ¶ 7.)

Defendant DaSilva, a white male, was working as a correction officer in the Rehabilitation Unit at the time plaintiff was transferred there in January 2006. (County 56.1 ¶ 9; DaSilva 56.1 ¶ 2; Pl.'s Counter 56.1 ¶ 2.)

#### 1. November 15, 2007 Memorandum and Subsequent Investigation

On Friday, November 9, 2007, plaintiff informed Gruntorad, his supervisor, that he was experiencing problems with DaSilva, but that he was unsure whether he wanted to "pursue this situation." (County 56.1 ¶ 11.) Gruntorad told plaintiff "that there was no place for harassment in the sheriff's department," and that plaintiff should

---

[1] Although the parties' respective Rule 56.1 statements of facts contain specific citations to the record, the Court cites to the Rule 56.1 statement instead of the underlying citation to the record. However, the Court disregards all assertions in the Rule 56.1 statements that are unsupported by the record. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting that district court may

disregard an assertion in a Rule 56.1 statement that is unsupported by record).

[2] "County 56.1" refers to the Rule 56.1 statement of facts submitted on behalf of the County defendants. "DaSilva 56.1" refers to the Rule 56.1 statement of facts submitted on behalf of defendant DaSilva.

"officially bring [DaSilva] up on department charges" if he was harassing plaintiff, but that she would give plaintiff the weekend to decide how to handle the situation. (County 56.1 ¶ 12.) The following Monday, Gruntorad gave plaintiff a copy of the NCSD's anti-harassment and discrimination Standard Operating Procedure ("SOP") and told him that he should file a complaint if DaSilva had violated the SOP. (County 56.1 ¶ 13.) Over the next day or two, plaintiff conveyed to Gruntorad some specific allegations of harassment by DaSilva, and she ordered plaintiff to provide her with a report of his allegations. (County 56.1 ¶ 14.)

Complying with Gruntorad's directive, plaintiff filed an inter-departmental memorandum detailing his allegations of harassment by DaSilva on November 15, 2007. (County 56.1 ¶ 14; DaSilva 56.1 ¶ 32.) Plaintiff's memorandum alleged that DaSilva committed, *inter alia*, the following acts:

- telephoning plaintiff, saying that "Johnson is a dead man," and then hanging up;
- mimicking and mocking plaintiff in front of inmates;
- drawing pictures of plaintiff giving oral sex to men;
- stuffing tree branches in the rims of plaintiff's car tires and scratching the hood of his car;
- tailgating plaintiff "honking like a maniac" while driving to work;
- pulling his gun out of his holster while smiling at plaintiff, and then tailgating plaintiff while driving;
- yelling at plaintiff in a classroom to get out of his chair, spraying the chair after plaintiff stood up, and

then threatening to ram the spray can down plaintiff's throat.[3]

(Siravo Decl. Ex. B, Memorandum from Johnson to Gruntorad, Nov. 15, 2007.) None of the allegations in plaintiff's November 15, 2007 memorandum concerned racial animus. (County 56.1 ¶ 16; DaSilva 56.1 ¶ 33; *see generally* Siravo Decl. Ex. B, Memorandum, Nov. 15, 2007.) Plaintiff has also testified that DaSilva called him a "n***** and a monkey" during the classroom chair incident; however, plaintiff did not report this statement in his November 15, 2007 memorandum. (County 56.1 ¶ 17; *see* Johnson Dep. at 76, 470.)

Immediately after receiving plaintiff's memorandum, Gruntorad ordered the separation of plaintiff and DaSilva, and DaSilva's right to possess a firearm was revoked. (County 56.1 ¶¶ 18–19; DaSilva 56.1 ¶ 37.) Gruntorad then forwarded plaintiff's memorandum to her supervisor, Zuaro, who forwarded the memorandum to the Nassau County Equal Employment Opportunity office (the "County EEO") for investigation.[4] (County 56.1 ¶ 20; *see* Siravo Decl. Ex. C, Memorandum from Gruntorad to Zuaro, Nov. 16, 2007.)

On November 16, 2007, plaintiff met with Dr. Joseph Volker ("Volker"), an affirmative action specialist and the County EEO's representative for the NCSD. (*See* Pl.'s Counter 56.1 ¶ 157.) Based upon plaintiff's inter-departmental memorandum

---

[3] In his deposition, plaintiff testified that these incidents did, in fact, occur. (*See* Johnson Dep. at 29–77.)

[4] The County EEO investigates claims of discrimination and retaliation by employees of the County. (County 56.1 ¶ 69.) Each department within the County is assigned a County EEO representative who investigates complaints made within their particular department. (*Id.* ¶ 70.)

and information provided to Volker by plaintiff, Volker completed the County EEO's initial intake form and checked off both race and sexual orientation as the bases of DaSilva's harassment. (*Id.* ¶¶ 157–58; DaSilva 56.1 ¶ 36.) Volker sent the County EEO complaint to Mary Elisabeth Ostermann ("Ostermann"), who was the director of the County EEO (*see* Volker Dep. at 15), and Loconsolo, who was the general counsel to the NCSD. (*See* Pl.'s Counter 56.1 ¶ 161.) Thereafter, plaintiff made other complaints to Volker, which Volker forwarded to Ostermann, Loconsolo, and Sposato. (*See id.* ¶ 164.)

Instead of launching a full investigation, Volker claims that the County EEO conducted only a "limited inquiry" into plaintiff's allegations. (*See* Volker Dep. at 62.) According to Volker, his role in this "limited inquiry" was to handle the "immediate impact" of the alleged discrimination on the members of the NCSD, while Ostermann investigated plaintiff's complaint for bias and discrimination. (*See id.* at 64–65.) Volker explained that the "limited inquiry" was "an evasion" enabling the County EEO to close cases without conducting investigations. (*See id.* at 176.) Loconsolo also described the investigation as a "limited inquiry." However she testified that limited inquiries still entailed interviews of potential witnesses. (*See* Loconsolo Dep. at 109.)

Twelve days after plaintiff filed his complaint, Ostermann determined that the complaint should be referred back to the NCSD because plaintiff's allegations did not concern harassment on the basis of plaintiff's membership in a protected class (*e.g.*, race). (Pl.'s Counter 56.1 ¶ 171.) Accordingly, the County EEO referred the matter back to the NCSD for investigation on November 28, 2007. (*See* County 56.1

¶ 21; Siravo Decl. Ex. F, Memorandum from Chen to File, Nov. 28, 2007.)

Ultimately, Volker found two witnesses who corroborated plaintiff's allegation of the so-called "chair incident." (County 56.1 ¶ 23.) In particular, these witnesses confirmed that DaSilva had confronted plaintiff, forced him out of a chair, told him he stunk "like a monkey," and called him a "f****** homo." (Siravo Decl. Ex. H, Case Analysis & Pre-Determination, Jan. 3, 2008.) Witnesses also confirmed that, just before plaintiff claimed that DaSilva had tailgated him, DaSilva rushed to his car and said, "I have to go. I have to follow Rodney." (*Id.*)

Volker met with Loconsolo and NCSD Commissioner Sidney Head ("Head") to discuss his findings. (County 56.1 ¶ 24.) Loconsolo recommended that the investigation stay with her and Volker rather than proceed to the NCSD's Internal Affairs Unit ("IAU"). (Pl.'s Counter 56.1 ¶ 171.) Commissioner Head decided to send Volker's findings to Zuaro, and on March 12, 2008, Zuaro gave DaSilva a written reprimand as discipline for his actions. (County 56.1 ¶¶ 24–25; *see* Siravo Decl. Ex. J, Notice of Personnel Action, Mar. 13, 2008.)

## 2. Allegations of Harassment in 2008 and Defendants' Response

In the meantime, on January 3, 2008, plaintiff submitted another inter-departmental memorandum to McDevitt alleging that DaSilva had called him a "f****** asshole" the day before. (Pl.'s Counter 56.1 ¶¶ 72–74; DaSilva 56.1 ¶ 39.)

On April 1, 2008, plaintiff submitted two additional memoranda to Volker documenting more alleged harassment by DaSilva. (County 56.1 ¶ 26; DaSilva 56.1

¶ 41.) In the first memorandum, plaintiff stated that DaSilva called him a "f****** asshole" on March 14, 2008. (Siravo Decl. Ex. K, Memoranda from Johnson to Volker, Apr. 1, 2008, at 1.) In the second, plaintiff averred that DaSilva drove alongside plaintiff on the Southern State Parkway making faces at plaintiff before speeding off.[5] (*See id.* at 2.) Plaintiff also expressed concern that DaSilva had received only a reprimand for his actions, and that if the NCSD returned DaSilva's firearm to him, DaSilva might shoot plaintiff. (*See id.*) In response to these two memoranda, Zuaro referred DaSilva to the Employee Assistance Program. (County 56.1 ¶ 27.)

On August 20, 2008, plaintiff submitted another inter-departmental memorandum in which he alleged that DaSilva had intentionally bumped him with his shoulder while the two officers were picking up their paychecks.[6] (County 56.1 ¶ 28; DaSilva 56.1 ¶ 45.) At least one witness confirmed plaintiff's version of events. (County 56.1 ¶ 29.) Plaintiff also filed a complaint dated August 21, 2008, with the County EEO. (*See* Brewington Decl. Ex. II, County EEO Compl., Aug. 21, 2008.) The complaint alleged harassment on the basis of retaliation, but not race. (*See id.* at 1; *see also* DaSilva 56.1 ¶¶ 55–56.)

Golio, the supervisor of the NCSD's Legal Unit, directed plaintiff to meet with Kreutz, a supervisor in the IAU. (Pl.'s Counter 56.1 ¶¶ 177, 187–88.) Plaintiff met with Kreutz on August 22, 2008. (*Id.* ¶ 189.) Kreutz informed plaintiff that IAU could not assist plaintiff at that time because the County EEO was still conducting its

investigation. (*Id.* ¶ 190.) According to Loconsolo, however, IAU and County EEO investigations may overlap, and only she, the commander officer of IAU, or the NCSD Sheriff had the authority to end an IAU investigation due to a parallel investigation by the County EEO. (*See* Loconsolo Dep. at 53–57.) Not until November 18, 2008, did Kreutz decide to investigate the August 20, 2008 incident, and IAU took two years to complete the investigation. (Pl.'s Counter 56.1 ¶¶ 198, 201.)

Meanwhile, as a result of the August 20, 2008 incident, Zuaro, Gruntorad, and McDevitt met with DaSilva and his union representative. (County 56.1 ¶ 30.) Ultimately, no disciplinary action was taken against DaSilva, but an alternative arrangement was made for DaSilva to pick up his paycheck elsewhere so that he would not cross paths with plaintiff. (County 56.1 ¶ 30; *see* E-mail from Zuaro to Head, Sept. 5, 2008.) No further incidents occurred between plaintiff and DaSilva while they were picking up their paychecks. (County 56.1 ¶ 31.)

On September 4, 2008, plaintiff submitted additional memoranda alleging further harassment by DaSilva. (County 56.1 ¶ 32.) In one memorandum, plaintiff claimed that DaSilva had followed him into a Walmart parking lot and waited behind him for several minutes. (*Id.* ¶ 32; DaSilva 56.1 ¶ 49; Siravo Decl. Ex. N, Memoranda from Johnson to Gruntorad, Sept. 4, 2008, at 1.) In the second memorandum dated September 4, 2008, plaintiff complained that while he was leaving work and merging onto the Southern State Parkway, DaSilva raced past him and almost cut him off.[7] (County 56.1 ¶ 32; DaSilva 56.1 ¶ 46;

---

[5] Plaintiff also described these incidents in his deposition. (*See* Johnson Dep. at 111–15, 118–20.)

[6] Plaintiff described this incident in his deposition, as well. (*See* Johnson Dep. at 141–47.)

[7] Plaintiff testified about these events during his deposition. (*See* Johnson Dep. at 124–30, 132–36.)

Siravo Decl. Ex. N, Memoranda, Sept. 4, 2008, at 2.) Plaintiff testified that he had complained to Zuaro about DaSilva almost running him off the road, but that Zuaro said "he couldn't do anything until he [had] seen blood." (Johnson Dep. at 139–40.)

Plaintiff had another incident with DaSilva on August 29, 2008, which he memorialized in a separate inter-departmental memorandum to Kreutz dated September 8, 2008. (See Johnson Dep. at 160–64; DaSilva 56.1 ¶ 51; Pl.'s Counter 56.1 ¶¶ 92–98.) In this memorandum, plaintiff alleged that the rear passenger side of his car had been hit by another car while parked in the NCSD parking lot. (Pl.'s Counter 56.1 ¶ 92; DaSilva 56.1 ¶ 51.) The blue residue on plaintiff's car was very similar to the blue paint on DaSilva's car, and numerous correction officers had witnessed DaSilva painting his car around the same time that plaintiff's car was hit. (Pl.'s Counter 56.1 ¶¶ 92–96.)

On August 1, 2008, plaintiff filed a complaint with the County EEO documenting his allegations contained in his inter-departmental memoranda dated from January 3, 2008, through September 8, 2008. (DaSilva 56.1 ¶ 54.)

On September 23, 2008, DaSilva was transferred out of the Rehabilitation Unit to the Security Unit. (County 56.1 ¶ 34.) Zuaro testified that he transferred DaSilva to the Security Unit so that DaSilva would receive closer supervision. (County 56.1 ¶ 35.) The next incident between plaintiff and DaSilva did not occur until December 17, 2009—over one year after DaSilva's transfer. (County 56.1 ¶¶ 36, 40.)

### 3. Allegations of Harassment in 2009

Sometime in 2009, plaintiff was transferred from the 832 Law Library to the Core Law Library at his request. (County 56.1 ¶ 37.) As plaintiff explained in his deposition, he told Gruntorad that he was "burnt out" from his assignment to the 832 Law Library, which had involved dealing with eighty to one hundred inmates per day. (See Johnson Dep. at 186–87, 193.) By contrast, a correction officer assigned to the Core Library dealt with approximately ten inmates per day. (See id. at 186–87.) Indeed, plaintiff testified that he went through five partners in three years while assigned to the 832 Law Library. (See id. at 188.)

Plaintiff's placement in the Core Law Library put him in a position to have more contact with DaSilva, however. (County 56.1 ¶ 52.) On December 17, 2009, plaintiff claims that he encountered DaSilva in the Core Courtyard, and that DaSilva called him a "cock sucking n*****" and said that his "mother was a whore." (County 56.1 ¶ 40.) According to an inter-departmental memorandum submitted by plaintiff on December 18, 2009, DaSilva continued calling plaintiff a n***** and threatened to "kick [his] ass." (Siravo Decl. Ex. P, Memorandum from Johnson to McDevitt, Dec. 18, 2009.) Plaintiff also filed a complaint with the County EEO on December 18, 2009, alleging the same conduct and claiming harassment on the basis of his race, color, and sex. (See DaSilva 56.1 ¶¶ 60–61; Brewington Decl. Ex. HH, County EEO Compl., Dec. 18, 2009.)

Plaintiff's December 18, 2009 memorandum was referred to the IAU for an investigation. (County 56.1 ¶ 41.) Plaintiff stated that he would provide a statement to investigators if ordered to do so; in response, he was told that he would not be ordered to give a statement. (County 56.1 ¶¶ 42–43; Pl.'s Reply 56.1 ¶ 42; see Siravo Decl. Ex. Q, NCSD IAU Case Narration, June 21, 2010.) Because plaintiff did not give a

statement and DaSilva denied the allegations, the IAU closed the investigation. (County 56.1 ¶ 43; *see* Siravo Decl. Ex. Q, NCSD IAU Case Narration, June 21, 2010.)

4. Allegations of Harassment in 2010 and Plaintiff's Transfer to the 832 Law Library

Plaintiff submitted yet another inter-departmental memorandum alleging harassment by DaSilva on January 11, 2010. (County 56.1 ¶ 44.) In this memorandum and in his deposition testimony, plaintiff claims that DaSilva spit toward him. (County 56.1 ¶ 44; Johnson Dep. at 215.)

In response to plaintiff's January 11, 2010 memorandum, Gruntorad requested reports from all possible witnesses and referred the memorandum to the IAU. (County 56.1 ¶¶ 46–47.) Correction Officer Darryl Evans, whom plaintiff had identified as a possible witness to the incident, stated that he had heard "what appeared to be a spitting sound." (*See* Siravo Decl. Ex. S, NCSD IAU Case Narration, June 21, 2010.) Ultimately, however, the IAU closed the case as "not sustained." (County 56.1 ¶ 50.)

On January 12, 2010, Gruntorad transferred plaintiff back to the 832 Law Library. Gruntorad testified that she transferred plaintiff to avoid further incidents between plaintiff and DaSilva, and because many other transfers were made at the same time. (County 56.1 ¶¶ 53–54; Pl.'s Reply 56.1 ¶¶ 53–54; *see* Gruntorad Dep. at 248.) An e-mail from Gruntorad to her supervisor explained that she transferred Johnson because she wanted to separate him from DaSilva and needed to make room in the Core Library for someone else. (*See* Siravo Decl. Ex. T, E-mail from Gruntorad to Rogers, Jan. 22, 2010.) Plaintiff claims that Gruntorad transferred him back to the 832 Law Library as retaliation for his

complaints about DaSilva, as he described the 832 Law Library as a "burnout post." (*See* Pl.'s Reply 56.1 ¶ 53; Johnson Dep. at 186, 254.) Plaintiff's salary, benefits, title, and schedule remained unchanged, and he had no additional encounters with DaSilva after the transfer. (County 56.1 ¶¶ 55–57.)

Plaintiff complained of his transfer to Gruntorad in two inter-departmental memoranda dated March 17, 2010. (County 56.1 ¶ 60.) In the first memorandum, plaintiff requested to be transferred out of the 832 Law Library, explaining that he had already served for three years in the 832 Law Library, and that the 832 Law Library was known as a "burnout post," "punishment assignment," and "the least desirable post in the entire unit." (Siravo Decl. Ex. V, Memoranda from Johnson to Gruntorad, Mar. 17, 2010, at 1.) In the second memorandum, plaintiff expressed his belief that he was not being treated fairly and that he was assigned to the 832 Law Library as retaliation for his prior complaints. (*Id.* at 2.) Plaintiff sent a copy of the second memorandum to his private attorney, the president of his union, and Gruntorad's superior, Captain Ronald Rogers. (County 56.1 ¶¶ 61–62.)

McDevitt found Gruntorad crying in her office over plaintiff's memorandum. (Pl.'s Counter 56.1 ¶ 125.) Gruntorad, who was set to retire at the end of the month, considered plaintiff's memorandum to be harassment and intimidation. (*See* Brewington Decl. Ex. DD, Memorandum from Gruntorad to Sposato, Mar. 18, 2010.)

For copying his attorney and Gruntorad's superior, Gruntorad signed off on the issuance of a Notice of Personnel Action ("NOPA") against plaintiff, and plaintiff lost ten vacation days. (County 56.1 ¶ 63; Siravo Decl. Ex. X, NOPA, Mar. 29, 2010.) Plaintiff grieved his discipline before

an arbitrator, and the arbitrator found that plaintiff had violated the NCSD's Rules and Regulations by sending the memorandum to his private attorney, but not by sending it to Gruntorad's superior. (*See* Siravo Decl. Ex. Z, Arbitrator Decision, Mar. 29, 2011.) The arbitrator also reduced plaintiff's punishment from the loss of vacation days to a reprimand. (*See id.*) In his deposition testimony, plaintiff explained that he did not know that he was violating the NCSD's Rules and Regulations at the time, but he knows now that he did violate the rules. (*See* Johnson Dep. at 259.)

On July 28, 2010, plaintiff submitted an inter-departmental memorandum to McDevitt explaining that DaSilva had stated that he was going to leave plaintiff alone, that he was planning to retire, and that he had, in fact, turned on plaintiff's computer and left homosexual drawings on plaintiff's desk. (County 56.1 ¶ 58; *see* Siravo Decl. Ex. U, Memorandum from Johnson to McDevitt, July 28, 2010.)

Within one year of his transfer to the 832 Law Library, plaintiff was transferred back to the Core Library. (*See* Johnson Dep. at 384–85.)

## B. Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 18, 2010. The EEOC issued a notice of right to sue on October 4, 2010.

Shortly thereafter, on December 30, 2010, plaintiff commenced the instant action. Following discovery by the parties, DaSilva moved for summary judgment on February 20, 2014, and the County defendants moved for summary judgment on February 21, 2014. A discovery dispute prolonged the briefing on the motion, and

plaintiff filed his joint opposition to the motions on August 15, 2014. Defendants filed their replies on August 29, 2014. The Court heard oral argument on the motions on September 19, 2014. This matter is fully submitted, and the Court has fully considered the submissions of the parties.

## II. Standard of Review

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

### A. Claims against the NCSD

As an initial matter, the Court grants summary judgment to the NCSD because the NCSD lacks the legal capacity to be sued separately from the County. It is well-established that the NCSD is merely an administrative arm of the County and therefore lacks any independent legal identity apart from the County. Courts thus dismiss claims against the NCSD when the plaintiff has also sued the County itself. *See, e.g.*, *Jones v. Nassau Cnty. Corr. Inst.*, No. 14-CV-1217 (JFB)(GRB), 2014 WL 1277908, at *4 (E.D.N.Y. Mar. 26, 2014) (dismissing claims against the NCSD because it lacks an independent legal identity); *Miller v. Cnty. of Nassau*, No. 10-CV-3358, 2013 WL 1172833, at *4 (E.D.N.Y. Mar. 19, 2013) (same). For this reason, the Court grants NCSD's motion for summary judgment in its entirety.

### B. Official Capacity

Next, the Court grants summary judgment as to all claims for the individual defendants in their official capacities because the County is a named defendant in the instant case. "'[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 283–84 (E.D.N.Y. 2010) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978)); *see also Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (noting that "a claim asserted against a government official in his official capacity is essentially a claim against the governmental entity itself"); *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010) (summary order) ("The suit against the mayor and police chief in their official capacities is essentially a suit against

the City of Schenectady, because in a suit against a public entity, naming officials of the public entity in their official capacities adds nothing to the suit." (internal citations and quotation marks omitted)). Accordingly, where a plaintiff brings claims against both a municipality and individuals in their official capacities as agents of that municipality, "'courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources.'" *Castanza*, 700 F. Supp. 2d at 284 (quoting *Escobar v. City of New York*, No. 05-CV-3030-ENV-CLP, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007)).

### C. Title VII

Plaintiff brings hostile work environment and retaliation claims under Title VII against all defendants except DaSilva. At the outset, the Court notes that there is no individual liability under Title VII. Accordingly, the Court grants summary judgment for all individual defendants on plaintiff's Title VII claims. *See, e.g.*, *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (affirming dismissal of Title VII claims against individual defendants "because individuals are not subject to liability under Title VII"); *Copeland v. Rosen*, 38 F. Supp. 2d 298, 302 (S.D.N.Y. 1999) ("[I]ndividual employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employee."). The Court proceeds to consider the viability of plaintiff's Title VII claims against the County.

### 1. Statute of Limitations

First, the County defendants contend that plaintiff's Title VII claims are time-barred to the extent they rely on incidents occurring before April 24, 2009 (*i.e.*, more than three hundred days before the filing of his EEOC complaint on February 18, 2010). (*See* County Defs.' Mem., at 3.) The Court disagrees.

Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff in New York has 300 days "after the alleged unlawful employment practice occurred" to file a charge of discrimination with the EEOC. *See, e.g.*, *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133–34 (2d Cir. 2003); *Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999). To determine whether a claim was timely filed, incidents of employment discrimination or retaliation "must be categorized as either discrete acts or continuing violations." *Alers v. N.Y.C. Human Res. Admin.*, No. 06-CV-6131 (SLT)(LB), 2008 WL 4415246, at *5 (E.D.N.Y. Sept. 24, 2008) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–16 (2002)), *aff'd*, 357 F. App'x 330 (2d Cir. 2009). A claim based upon a discrete act of discrimination or retaliation, "such as termination, failure to promote, denial of transfer, or refusal to hire," is time-barred if the discrete act occurred outside the applicable limitations period. *Morgan*, 536 U.S. at 113; *see, e.g.*, *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 WL 2863224, at *17 (E.D.N.Y. June 19, 2014). This holds true "even when [a discrete act is] related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. By contrast, a claim based upon discrimination or retaliation occurring "over a series of days or perhaps years," such as a hostile work environment, is timely if even one contributing act occurred within the limitations period. *Id.* at 116–18; *see, e.g.*, *Elmenayer*, 318 F.3d at 134. Accordingly, a hostile work environment claim is timely filed even if only one act contributing to the hostile work environment occurred within the applicable limitations period. *See, e.g.*, *Raneri v. McCarey*, 712 F.

Supp. 2d 271, 281 (S.D.N.Y. 2010) ("To defeat the statute of limitations by applying the continuing violation theory, the evidence must show that such a hostile environment was created prior to, and continued into, [the limitations period].").

Here, plaintiff filed his charge of discrimination with the EEOC on February 18, 2010. Accordingly, his claims must have accrued on or after April 24, 2009, in order to be timely. With respect to plaintiff's Title VII hostile work environment claim, plaintiff has created a triable issue of fact concerning harassment by DaSilva extending into 2010. Thus, plaintiff's hostile work environment claim encompasses incidents occurring within the 300 day limitations period and is timely. As for his Title VII retaliation claim, the alleged acts of retaliation—the transfer to the 832 Law library in January 2010 and the NOPA issued in March 2010—clearly occurred within the 300 day limitations period. Thus, the retaliation claim is timely, as well.

### 2. Hostile Work Environment

Plaintiff claims that he was subjected to a racially hostile work environment that can be imputed to the County. For the reasons that follow, the Court denies the County's motion for summary judgment as to this claim.

#### a. Legal Standard

To establish a hostile work environment under Title VII, a plaintiff must show that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Williams v. Cnty. of Westchester*, 171 F.3d 98, 100–01 (2d Cir. 1999) ("[P]laintiff must show more than a few isolated incidents of racial enmity" to establish a claim of a racially hostile work environment (internal citations and quotation marks omitted)). A plaintiff must show not only that the conduct in question was "severe or pervasive enough to create an objectively hostile or abusive work environment," but also that "the victim . . . subjectively perceive[d] that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal citations and quotation marks omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). Relevant factors to consider in determining whether an environment is sufficiently hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148. The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotation marks and alteration omitted).

Furthermore, to succeed on a hostile work environment claim in the instant case, plaintiff must link the actions by defendants to his race. Although "[f]acially neutral

incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002), plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially neutral incidents were in fact discriminatory, *see Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999) ("But to sustain a Title VII hostile environment claim [plaintiff] must show more—she must produce evidence that she was discriminated against because of her race, and this she has not done."), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Finally, a plaintiff seeking to establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano*, 294 F.3d at 373. As the Supreme Court and Second Circuit have noted, "employers are not automatically liable for . . . harassment perpetrated by their employees." *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). Where, as here, the harassment was allegedly committed by a non-supervisory co-worker, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino*, 385 F.3d at 225. "An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it." *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995). "In the context of summary judgment, '[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary

judgment is inappropriate.'" *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 454 (E.D.N.Y. 2011) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

### b. Application

The Court concludes that plaintiff has created a triable issue of fact as to whether he endured a racially hostile work environment over a year period of four to five years. Specifically, plaintiff has come forward with evidence that, if credited, reasonably could support the following findings: DaSilva harassed and threatened him verbally, brandished his gun at plaintiff in a threatening manner, attempted to drive plaintiff off the road on several occasions, followed him outside work, scratched plaintiff's car, and put branches in his tires. A reasonable jury could also find that this harassment was continuous. Moreover, there is evidence that DaSilva used racially-charged language during some of these incidents. According to plaintiff, DaSilva called him a n***** and a monkey on multiple occasions. When evaluating the totality of the circumstances, if plaintiff's evidence is credited, a reasonable jury could find that plaintiff's work environment was permeated with racially discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive that it altered the conditions of plaintiff's employment and created an abusive working environment. [8] *See, e.g., Benedith v.*

---

[8] Defendants maintain that they are entitled to summary judgment because DaSilva did not use any racial slurs in many of the instances of alleged harassment of plaintiff. The Court disagrees. "Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment

*Malverne Union Free Sch. Dist.*, No. 11-CV-5964 (ADS)(GRB), 2014 WL 4056554, at *20 (E.D.N.Y. Aug. 15, 2014) ("'[G]iven American history, we recognize that the word 'n*****' can have a highly disturbing impact on the listener. Thus, a plaintiff's repeated subjection to hearing that word could lead a reasonable factfinder to conclude that a working environment was objectively hostile.'" (quoting *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004))). In addition, plaintiff testified that he subjectively perceived the environment to be abusive. (*See, e.g.*, Johnson Dep. at 37 ("I think he was on a racially motivated campaign to intimidate me, to torment me any opportunity he could.").)

Because the Court concludes that there is a genuine issue of fact concerning the existence of a racially hostile work environment, the Court must consider whether there is evidence from which a reasonable jury could impute that work environment to the County. The Court finds that there is. In particular, although plaintiff failed to identify any evidence of race-based discrimination in his November 15, 2007

---

claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [race]." *Alfano*, 294 F.3d at 378; *see, e.g.*, *McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 2d 390, 417 (E.D.N.Y. 2010) (concluding that reasonable jury could find hostile work environment based on disability based upon combination of disability-related comments and facially-neutral incidents); *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 191 (E.D.N.Y. 2008) (reaching same conclusion with respect to hostile work environment based on gender); *Zhao v. State Univ. of N.Y.*, 472 F. Supp. 2d 289, 313 (E.D.N.Y. 2007) (reaching same conclusion with respect to hostile work environment based on national origin). Here, a reasonable jury could infer that the facially neutral incidents of harassment were consistent with a hostile work environment based on race when there is evidence that, if credited, DaSilva used racially discriminatory language on some occasions.

inter-departmental memorandum (which, the County contends, led the County EEO to close his case within twelve days of receiving it), Volker later found evidence that DaSilva had, in fact, referred to plaintiff as a "monkey" during one of the incidents. In the Court's view, construing this evidence most favorably to plaintiff, a reasonable jury could find that the County's failure to follow up any further on the racial component to DaSilva's harassment constituted a wholly inadequate response to DaSilva's behavior. Moreover, the relatively minor discipline (a reprimand) imposed for DaSilva's conduct could also support a reasonable finding that the County's response to plaintiff's complaints was inadequate. *See, e.g.*, *Howley v. Town of Stratford*, 217 F.3d 141, 156 (2d Cir. 2000) (holding that evidence that defendant-employer imposed minimal punishment for harassment of plaintiff by its employee reasonably could "be viewed as an inappropriate response"). Indeed, there is evidence that DaSilva continued harassing plaintiff even after being disciplined.

Of course, the County can also point to evidence showing that it did take steps to separate plaintiff from DaSilva in an effort to improve plaintiff's situation. However, "[t]he promptness and adequacy of an employer's response is generally a question of fact for the jury," *Dobrich v. Gen. Dynamics Corp., Elec. Boat Div.*, 106 F. Supp. 2d 386, 394 (D. Conn. 2000), and this case is no different. Accordingly, the Court denies the County's motion for summary judgment as to plaintiff's Title VII hostile work environment claim. This claim may proceed to trial.

### 3. Retaliation

Plaintiff asserts that the County unlawfully retaliated against him for complaining about DaSilva's harassment. He bases this claim upon his transfer to the

832 Law Library in January 12, 2010, and the NOPA issued against him on March 29, 2010. (*See* Pl.'s Opp'n, at 22–24.) For the following reasons, the Court grants summary judgment to the County insofar as this claim is premised upon the transfer of plaintiff to the 832 Law Library, but denies summary judgment to the County with respect to this claim insofar as it is premised upon the NOPA.

### a. Legal Standard

Title VII prohibits an employer from firing an employee in retaliation for having made a charge of discrimination. 42 U.S.C. § 2000e-3(a). In the absence of direct evidence of a retaliatory motive, a Title VII retaliation claim is subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Kirkland v. Cablevision Sys.*, --- F.3d at ----, No. 13-3625-CV, 2014 WL 3686090, at *1 (2d Cir. July 25, 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). Under this framework, a plaintiff must first set forth a *prima facie* case of retaliation by showing that (1) he engaged in a protected activity; (2) defendant was aware of that activity; (3) plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See, e.g.*, *Kwan*, 737 F.3d 844; *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant-employer to provide a legitimate, non-retaliatory reason for its actions. *See, e.g.*, *Kirkland*, 2014 WL 3686090, at *2 (citing *McDonnell Douglas*, 411 U.S. at 802). The Supreme Court has explained the defendant's burden as follows:

The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated [or retaliated] against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [challenged action].

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981); *see, e.g.*, *Porter v. Potter*, 366 F. App'x 195, 197 (2d Cir. 2010) (summary order); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). Where the defendant articulates such a reason, "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . retaliation." *Kirkland*, 2014 WL 3686090, at *2.

Ultimately, because "Title VII retaliation claims must be proved according to traditional principles of but-for causation," the plaintiff must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see, e.g.*, *Kirkland*, 2014 WL 3686090, at *2; *Kwan*, 737 F.3d at 845. "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan*, 737 F.3d at 846. To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003). It is insufficient, however,

for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, *i.e.*, whether the record contains sufficient evidence "that retaliation was a but-for cause of the adverse employment action." *Weber v. City of New York*, 973 F. Supp. 2d 227, 271 (E.D.N.Y. 2013).

b. Application

i. *Prima facie* case

The County defendants contend that plaintiff cannot establish a *prima facie* retaliation claim as a matter of law because (1) he was not subjected to an adverse employment action, and (2) there is no evidence of a causal connection between plaintiff's complaints and those adverse employment actions. (*See* County Defs.' Mem., at 4–6.) The Court disagrees.

First, both plaintiff's transfer to the 832 Law Library and the NOPA issued against him could qualify as adverse employment actions. Significantly, the Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from, and broader than, the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal citations omitted). Here, a reasonable jury could find that both plaintiff's transfer and the NOPA meet that standard. With respect to the transfer,

plaintiff has testified that the 832 Law Library was a "burnout" post requiring a correction officer in that position to interact with ten times the number of inmates that a correction officer in the Core Library supervised. Moreover, plaintiff testified that he went through five partners in three years in that position, which supports his claim that officers tried to get out of that post as soon as possible. *See, e.g.*, *Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 491 (S.D.N.Y. 2009) (holding that lateral transfer from Special Offender Unit parole officer to parole officer handling mixed caseload could constitute adverse employment action for purposes of retaliation claim, where transfer entailed supervision of more parolees). *See generally Fornah v. Cargo Airport Servs., LLC*, No. 12-CV-3638 (RER), 2014 WL 25570, at *14 n.14 (E.D.N.Y. Jan. 2, 2014) ("A transfer can be an adverse employment action under a retaliation claim.") (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209–10 (2d Cir. 2006)). As for the NOPA, there is at least a genuine issue as to whether the NOPA affected plaintiff's ability to earn a promotion. (*See* Johnson Dep. at 369 (explaining how NOPA limits ability to earn promotion to corporal).) Accordingly, this form of reprimand may qualify as an adverse employment action in that it could reasonably dissuade a reasonable worker from making a charge of discrimination. *See, e.g.*, *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) ("A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy. A reasonable jury could conclude as much even when, as here, the letter does not directly or immediately result in any loss of wages or

benefits, and does not remain in the employment file permanently.").

The Court also concludes that plaintiff has met his minimal burden to show a causal connection between his complaints and the adverse employment actions discussed *supra*. *See generally Kwan*, 737 F.3d at 844 (describing plaintiff's burden at this stage as "minimal" and "*de minimis*" (internal citations and quotation markets omitted)). At this stage, a causal connection between the protected activity and the adverse employment action can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Here, plaintiff has put forth evidence that his transfer to the 832 Law Library occurred one day after he submitted his January 11, 2010 memorandum complaining of further harassment by DaSilva. Similarly, plaintiff's NOPA followed within weeks of his March 17, 2010 memoranda. This evidence suffices to shift the burden to the County to proffer legitimate, non-retaliatory reasons for the allegedly adverse employment actions discussed *supra*.

ii. Legitimate, Non-Retaliatory Reasons

With respect to the transfer, the County claims that Gruntorad transferred plaintiff from the Core Library to the 832 Law Library to separate plaintiff and DaSilva, and also for administrative reasons. (County Defs.' Mem., at 9–10; *see* Siravo Decl. Ex. T, E-mail from Gruntorad to Rogers, Jan. 22, 2010.) As plaintiff concedes, he had fewer interactions with DaSilva after his transfer to the 832 Law Library (*see* County 56.1 ¶ 56); indeed, no additional incidents of harassment by DaSilva occurred after the transfer (*see id.* ¶ 57). Moreover, Gruntorad's January 22, 2010 e-mail explaining her transfers creates at least a triable issue as to whether plaintiff was transferred to the 832 Law Library for administrative reasons. From this evidence, the Court concludes that the County has met its burden to proffer a legitimate, non-retaliatory reason for transferring plaintiff to the 832 Law Library. *See, e.g., Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872 (ER), 2013 WL 2922483, at *10 (S.D.N.Y. June 14, 2013) (holding that transfer of employee to meet employer's staffing needs in face of reduction in workforce was a legitimate, non-retaliatory reason for transfer); *Kemp v. Metro-N. R.R.*, 316 F. App'x 25, 27 (2d Cir. 2009) (summary order) (holding that "clash of personalities" was legitimate, non-discriminatory reason for transferring employee (citing *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986))); *Ferrer v. Potter*, No. 03-CV-9113 (AJP), 2005 WL 1022439, at *9 n.8 (S.D.N.Y. May 3, 2005) (same) (citing cases).

As for the NOPA, the County claims that it disciplined plaintiff for violating the NCSD's Rules and Regulations by sending an inter-departmental memorandum to his private attorney. (County Defs.' Mem., at 11–12.) A neutral arbitrator found that plaintiff violated at least one of NCSD's Rules and Regulations, and plaintiff conceded at his own deposition that his action violated those rules. (*See* Johnson Dep. at 259). An employer's belief that its employee violated company policy is certainly a legitimate, non-retaliatory reason for disciplining that employee. *See, e.g., Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997); *Shepheard v. N.Y.C. Corr. Dep't*, 360 F. App'x 249, 251

(2d Cir. 2010) (summary order); *see also Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("An employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise.").

In sum, the County has come forward with evidence of legitimate, non-retaliatory reasons for transferring plaintiff to the 832 Law Library and for issuing the NOPA. Accordingly, the burden shifts to plaintiff to come forward with admissible evidence showing that the County's proffered reasons were pretext for retaliation.

### iii. Pretext

First, the Court concludes that plaintiff has raised a triable issue of fact as to whether his transfer to the 832 Law Library would not have occurred in the absence of a retaliatory motive. Gruntorad testified that, at least in part, she transferred plaintiff "back to the 832 Law Library because of the January 11, 2010, Inter-Departmental Memo Plaintiff submitted regarding further harassment by Defendant DaSilva." (Gruntorad Dep. at 248.) Although she claims that her motivation behind this transfer was "to prevent any other problems" between plaintiff and DaSilva (*see id.*), it is unclear why she transferred plaintiff instead of transferring DaSilva—the one accused of pervasive harassment. *See Williams v. City of New York*, No. 99-CV-2697 (ARR)(LB), 2006 WL 2668211, at *22 (E.D.N.Y. Sept. 11, 2006) (holding that plaintiff's retaliatory transfer claim survived summary judgment where defendant transferred plaintiff instead of his accused harasser, observing that "[i]f, in fact, defendants' goal was to separate plaintiff and Jackson—presumably both (1) to prevent further disruptive conflict

between them and (2) to protect plaintiff from further incidents of sexual harassment and sexual assault, at least until the BOE completed its investigation into the veracity of her allegations—it seems that transferring Jackson, the accused harasser, to another school would have accomplished that goal"); *see also Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 642 (7th Cir. 2009) ("In the usual case we would expect the employer to remedy the harassment by inconveniencing the harasser with a transfer and not the victim."); *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) ("We strongly believe that the victim of sexual harassment should not be punished for the conduct of the harasser. We wholeheartedly agree with the EEOC that a victim of sexual harassment should not have to work in a less desirable location as a result of an employer's remedy for sexual harassment."). Construing the evidence most favorably to plaintiff, a reasonable jury could conclude from this evidence, evidence of the short timing between plaintiff's January 11, 2010 inter-departmental Memorandum and his transfer, and the additional evidence of Gruntorad's retaliatory motive discussed *infra*, that retaliation was a but-for cause of plaintiff's transfer to the 832 Law Library.

As for the NOPA, plaintiff has come forward with evidence that Gruntorad became upset when she received plaintiff's memorandum complaining that his transfer to the 832 Law Library was unfair. According to McDevitt, Gruntorad cried after receiving it. Gruntorad herself indicated her displeasure with plaintiff's memorandum in a memorandum sent to Sposato, describing it as harassment and intimidation. Additionally, as plaintiff observes, his January 11, 2010 memorandum also indicates that it was sent to plaintiff's private attorney; however, plaintiff was not disciplined at that time. (Pl.'s Counter 56.1 ¶ 141; *see* Siravo Decl.

Ex. R, Memorandum from Johnson to McDevitt, Jan. 11, 2010.) The fact that plaintiff was not punished for the same conduct in the past, coupled with evidence of Gruntorad's reaction to plaintiff's March 17, 2010 memorandum, could allow a reasonable jury to infer that the NOPA would not have been issued in the absence of a retaliatory motive.

For the foregoing reasons, the Court denies summary judgment to the County as to the Title VII retaliation claim.

### D. Claims under Sections 1981 and 1983

The Court turns next to plaintiff's hostile work environment and retaliation claims brought under Sections 1981 and 1983.

#### 1. Legal Standards

Most of the standards applicable to Title VII claims, discussed in detail *supra*, also apply to Section 1981 employment claims and Section 1983 equal protection claims. *See, e.g.*, *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010); *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). However, the Second Circuit has noted "several significant differences" between the standards governing Title VII claims, on the one hand, and claims brought under Sections 1981 and 1983, on the other hand. *See Patterson*, 375 F.3d at 225. First, whereas Title VII claims must be filed within 300 days of an EEOC filing, New York's three-year statute of limitations governs the timeliness of claims brought under Sections 1981 and 1983.[9] *See id.*; *see also Curto v.*

*Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (citing cases); *Harrison v. Harlem Hosp.*, 364 F. App'x 686, 688 (2d Cir. 2010) (summary order). Second, Section 1981 and Section 1983 claims against a municipality require proof "that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989) (discussing Section 1981); *Monell*, 436 U.S. at 692–94 (discussing Section 1983)). Third, as noted *supra*, individuals cannot be held liable under Title VII. *See id.* By contrast, individuals may be held liable under Sections 1981 and 1983 "for certain types of discriminatory acts, including those giving rise to a hostile work environment." *Id.* (citing cases). "Fourth, although in certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent, a plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional." *Id.* at 226–27 (internal citations omitted). In other words, whereas a plaintiff may pursue

---

[9] The County defendants contend that plaintiff's Section 1981 and Section 1983 claims are untimely to the extent they are premised on incidents that occurred more than three years before the commencement of the instant case. (*See* County Defs.' Mem., at 19 n.8.) The Court disagrees for substantially the same reasons discussed *supra* in connection with the timeliness of plaintiff's Title VII claims. *Cf. Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (applying Title VII standards of assessing timeliness to claims brought under Sections 1981 and 1983); *Bartoli v. City of New York*, No. 09-CV-4163 (JG)(VVP), 2010 WL 1539055, at *3 (E.D.N.Y. Apr. 19, 2010) (same) (citing cases). Plaintiff commenced this action on December 30, 2010; thus, his Section 1981 and 1983 claims must have accrued on or after April 24, 2009, in order to be timely. Because plaintiff has created a triable issue of fact concerning harassment by DaSilva extending into 2010, his entire hostile work environment claim is timely under the continuing violation doctrine. Plaintiff's retaliation claim is timely because the alleged acts of retaliation occurred in 2010—well within the three year limitations period.

a disparate impact theory of liability under Title VII, he may not do so under Sections 1981 or 1983. *See Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (citing *Patterson*, 375 F.3d at 226).

## 2. County Liability

With respect to plaintiff's hostile work environment claims, some of the individuals who conducted the investigation into plaintiff's harassment—individuals such as the director of the County EEO, the commissioner of the NCSD, and the general counsel to the NCSD—were policymakers for the County. *See Wharton v. Cnty. of Nassau*, No. 10-CV-0265 (JS)(AKT), 2013 WL 4851713, at *14 (E.D.N.Y. Sept. 10, 2013) (concluding that Loconsolo and Ostermann were policymakers for the County). Evidence that their investigation may have been inadequate, discussed *supra*, thus supports liability under Sections 1981 and 1983. *See Smith*, 798 F. Supp. 2d at 454 ("Here, the individuals who conducted the investigation into the hanging of the noose were policy makers for the Sanitary District. Thus, the evidence that their investigation may have been insufficient raises a triable issue of fact as to whether their failure to conduct an adequate investigation could be attributed to the Sanitary District as municipal policy. . . . Therefore, summary judgment on the Section 1981 and 1983 hostile work environment claims against the Sanitary District is not appropriate."). Moreover, plaintiff has introduced additional evidence, through the testimony of Volker, that the County EEO had a *de facto* policy of investigating complaints by conducting only a "limited inquiry" despite the County's formal policy requiring a more expansive investigation. On the basis of this evidence, the Court denies the County's motion for summary judgment on the Sections 1981 and 1983 hostile work environment claims.

As for the Section 1981 and Section 1983 claims based on retaliation, however, there is simply no evidence of a County policy or custom that caused the alleged retaliation. In fact, plaintiff points to no such evidence in his opposition papers; he has limited his argument only to the existence of a policy or custom as it relates to a racially hostile work environment. Accordingly, the Court grants the County's motion for summary judgment as to the Section 1981 and Section 1983 retaliation claims.

## 3. Individual Liability

Both Section 1981 and Section 1983 require personal involvement in the claimed violation in order to hold an individual defendant liable in his individual capacity. *See, e.g.*, *Patterson*, 375 F.3d at 229. "Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Id.* (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

### a. DaSilva

DaSilva argues that the Section 1981 and Section 1983 claims fail as a matter of law because he was not acting under color of state law. (*See* DaSilva Mem., at 8–11.) *Cf. Glendora v. Hostetter*, 916 F. Supp. 1339, 1341 (S.D.N.Y.) ("To recover under 42 U.S.C. §§ 1983 and 1981, a plaintiff must show the alleged violation occurred 'under color of state law.'"), *aff'd*, 104 F.3d 353 (2d Cir. 1996). Plaintiff fails to respond to this argument in his opposition brief.

"In a case charging hostile environment . . . harassment, 'under color of state law' ordinarily requires that the

harasser be a supervisor or have some position of authority or control over the plaintiff." *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999) (internal citations and quotation marks omitted). "Where the individual defendant is merely a co-worker of the plaintiff, such claims are routinely dismissed for failure to state a claim." *Olsen v. Cnty. of Nassau*, No. 05-CV-3623 (ETB), 2008 WL 4838705, at *7 (E.D.N.Y. Nov. 4, 2008); *see also Burns v. City of Utica*, --- F. Supp. 2d ----, No. 12-CV-1741 (FJS/DEP), 2014 WL 688975, at *6 (N.D.N.Y. Feb. 20, 2014) (dismissing Section 1983 claim because no allegation that defendant's sexual assault of plaintiff related to his duties as firefighter); *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317 (E.D.N.Y. 2014) (dismissing Section 1983 claim against individuals who did not have supervisory authority over plaintiff and did not use their governmental authority in sexually harassing her); *Petrosky v. N.Y. State Dep't of Motor Vehicles*, 72 F. Supp. 2d 39, 63 (N.D.N.Y. 1999) ("Other courts have rejected the contention that co-worker harassment was done under color of law 'when the harassment did not involve use of state authority or position'" (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992))). The Second Circuit, although not taking a definitive position on this issue, observed in *Patterson* that "[o]ther circuits confronted with a plaintiff's claims of harassment by his or her nonsupervisory co-workers have ruled that some harassment should be construed merely as personal-frolic hazing or horseplay and not as state action." 375 F.3d at 230.

Here, as an initial matter, plaintiff's failure to address DaSilva's argument concerning his individual liability under Sections 1981 and 1983 could be grounds for the Court to consider these claims abandoned. *See, e.g.*, *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267–68 (E.D.N.Y. 2009) ("'Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))). In any event, it is undisputed that plaintiff and DaSilva held the same rank of Correction Officer; DaSilva was not plaintiff's superior. In addition, the harassment of plaintiff for which DaSilva is accused had absolutely no connection to DaSilva's position as a correction officer. Instead, even when viewing the evidence in the light most favorable to plaintiff, the Court concludes that DaSilva's harassment of plaintiff was completely outside the scope of DaSilva's governmental authority. Accordingly, the Court grants summary judgment to DaSilva as to the Section 1981 and Section 1983 claims against him because DaSilva's conduct did not constitute state action.

### b. Gruntorad

To the extent plaintiff premises his Section 1981 and 1983 claims on alleged retaliation, a reasonable jury could find that Gruntorad issued the decision to transfer plaintiff to the 832 Law Library and the NOPA in retaliation for plaintiff's memoranda complaining of discrimination and harassment. As Gruntorad was personally involved in these decisions, she may be held liable for retaliation under Sections 1981 and 1983. Therefore, the Court denies Gruntorad's motion for summary judgment as to these claims.

However, there is no evidence that Gruntorad was personally involved in creating the racially hostile work environment of which plaintiff complains.

Moreover, plaintiff has come forward with evidence showing at most that Gruntorad was negligent in responding to plaintiff's complaints about that hostile work environment. As the Second Circuit has held, mere negligence in the supervision of subordinates who commit wrongful acts is insufficient to give rise to individual liability under Sections 1981 and 1983. *See, e.g.*, *Whidbee*, 223 F.3d at 75 ("At most, the Garzarellis were negligent in maintaining their restaurant's anti-discrimination policy. Even if this were the case, such negligence does not constitute the 'personal involvement' or 'affirmative link' necessary to support a claim of individual liability."); *cf. Patterson*, 375 F.3d at 229 ("Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also *gross negligence* in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." (emphasis added)). Accordingly, the Court grants Gruntorad's motion for summary judgment as to these claims.

### c. Other Defendants

As for the remaining defendants, even when viewing the evidence in the light most favorable to plaintiff, the evidence shows that Sposato, Loconsolo, Kreutz, Zuaro, Golio, and McDevitt were at most negligent in their failure to follow the County's internal investigation and antidiscrimination policies in responding to plaintiff's complaints about DaSilva's behavior. Because there are no other facts demonstrating their personal involvement in the allegedly hostile work environment, the Court grants summary judgment to these defendants as to the hostile work environment claims under Sections 1981 and 1983. *See, e.g.*, *Whidbee*, 223 F.3d at 75; *Marvelli v. Chaps Cmty. Health Ctr.*, 193 F. Supp. 2d 636, 653 (E.D.N.Y. 2002). Moreover, although some of these defendants were involved in the issuance of the NOPA, there is no evidence that a retaliatory animus motivated anyone else except Gruntorad to take disciplinary action against plaintiff. Therefore, the Court grants summary judgment to these defendants on the Section 1981 and Section 1983 retaliation claims.

\*     \*     \*

To summarize, plaintiff's Section 1981 and Section 1983 hostile work environment claims may proceed against the County, and his Section 1981 and 1983 retaliation claims may proceed against Gruntorad. The Court grants summary judgment to all individual defendants with respect to the Section 1981 and Section 1983 hostile work environment claims. The Court also grants summary judgment to the County, DaSilva, Sposato, Loconsolo, Kreutz, Zuaro, Golio, and McDevitt with respect to plaintiff's retaliation claims under Sections 1981 and 1983.

### E. Title VI Claim

Plaintiff brings a Title VI claim against all defendants except DaSilva. As an initial matter, it is well established that individuals sued in their individual capacities cannot be held liable under Title VI. *See, e.g.*, *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 708 (S.D.N.Y. 2013), *aff'd*, No. 13-2761, 2014 WL 2109051 (2d Cir. May 21, 2014); *DT v. Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 498 (S.D.N.Y. 2008), *aff'd*, 348 F. App'x 697 (2d Cir. 2009); *Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 (DRH)(ETB), 2008 WL 2704920, at *8 (E.D.N.Y. July 8, 2008) (citing cases). Accordingly, the Court grants summary judgment for all individual defendants on this claim. For the reasons that follow, the

Court also grants summary judgment for the County as to this claim.

### 1. Legal Standard

Title VI of the Civil Rights Act of 1964 prohibits programs that receive federal funding from engaging in intentional discrimination on the basis of race. 42 U.S.C. § 2000d. "In order to recover for a violation of Title VI, a plaintiff must demonstrate that (1) the defendant received federal financial assistance, (2) the plaintiff was an intended beneficiary of the program or activity receiving the assistance, and (3) the defendant discriminated against the plaintiff on the basis of race, color, or national origin in connection with that program or activity." *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 233 (E.D.N.Y. 2010) (citing *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000)). In an employment discrimination case, "the federal funds received by defendants must have been aimed primarily at providing employment." *Id.* (citing *Ass'n Against Discrimination In Employment ("AADE"), Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)).

### 2. Application

The County defendants argue for summary judgment on this claim because the record is devoid of evidence showing that the County of NCSD received federal funding, or that plaintiff was the intended recipient of a program receiving such funding. (County Defs.' Mem., at 18–19.) Plaintiff does not contest this point.

Plaintiff's failure to address the County defendants' argument could be grounds for the Court to consider this claim abandoned. *See, e.g.*, *Maher*, 650 F. Supp. 2d at 267–68. Even if the claim were not abandoned, there is absolutely no evidence in the record that the County or NCSD received federal funding. For this reason, plaintiff's claim fails as a matter of law. *See Commodari v. Long Island Univ.*, 62 F. App'x 28, 30 (2d Cir. 2003) (summary order) (affirming summary judgment where there was "no evidence that the Union received federal financial aid for purposes of sustaining [plaintiff's] Title VI claim"); *Carmody v. Vill. of Rockville Ctr.*, 661 F. Supp. 2d 299, 338 (E.D.N.Y. 2009) (granting summary judgement where "plaintiff has failed to offer any evidence whatsoever to support his claim that the Village Defendants received federal funds aimed at employment during the time that plaintiff was employed with the RVCPD, thereby subjecting them to potential liability under Title VI"). Accordingly, the Court grants summary judgment for all defendants on the Title VI claim.[10]

### F. Section 1985(3)

Plaintiff brings a Section 1985(3) conspiracy claim against all defendants. For the following reasons, the Court grants summary judgment to all defendants on this claim.

### 1. Legal Standard

Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To establish a claim under § 1985(3), a plaintiff must establish (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the

---

[10] Because the Court concludes that plaintiff's Title VI claim fails on the merits as a matter of law, the Court need not address the County defendants' statute of limitations argument.

laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *See, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988)); *Frasco v. Mastic Beach Prop. Owners' Ass'n*, No. 12-CV-2756 (JFB)(WDW), 2014 WL 3735870, at *4 (E.D.N.Y. July 29, 2014); *Hollman v. Cnty. of Suffolk*, No. 06-CV-3589 (JFB)(ARL), 2011 WL 280927, at *11 (E.D.N.Y. Jan. 27, 2011).

The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. *See, e.g.*, *Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007) (summary order) (affirming dismissal of conspiracy complaint "at the first step of analysis" because complaint made reference only to employees of same corporation); *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[ ] and employees, each acting within the scope of his employment."); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 359–60 (E.D.N.Y. 1999); *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees."). To show that defendants acted outside the scope of their employment, such that the intracorporate conspiracy doctrine does not

apply, a plaintiff must show that the defendants were "pursuing personal interests wholly separate and apart from the entity." *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006) (citing cases); *see, e.g.*, *Little v. City of New York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (dismissing conspiracy claims under Sections 1983 and 1985 under intracorporate conspiracy doctrine where plaintiff "does not provide any evidence to suggest that [defendants] were motivated by an independent personal stake in his arrest and prosecution").

## 2. Application

All individual defendants were employees of the County during the relevant time period. Moreover, plaintiff has failed to submit any evidence suggesting that any of these defendants acted outside the scope of their official duties and in their own personal interests in discriminating or retaliating against him. Plaintiff's effort to salvage this claim by pointing to proof of discriminatory and retaliatory motives is unavailing; if such evidence sufficed to avoid dismissal under the intracorporate conspiracy doctrine, then the limited exception to the intracorporate conspiracy doctrine "would swallow the rule." *Jeter v. N.Y.C. Dep't of Educ.*, 549 F. Supp. 2d 295, 303 (E.D.N.Y. 2008) (dismissing Section 1985(3) claim where plaintiff had "not alleged that any of the alleged conspirators were motivated by anything other than the same bias and desire to retaliate that permeate his complaint"); *see also Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 401 (N.D.N.Y. 2008). Accordingly, plaintiff's Section 1985(3) fails as a matter of law, and all defendants are entitled to summary judgment on this claim.

### G. Section 1986

Plaintiff also brings a claim under Section 1986, which "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas*, 165 F.3d at 147 (citation and internal quotation marks omitted). Section 1985 liability is a necessary predicate to a Section 1986 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999) (affirming dismissal of Section 1986 claim where district court also dismissed Section 1985 claim). Here, because the Court grants summary judgment for defendants as to the Section 1985 claim, the Court also grants summary judgment for all defendants on the Section 1986 claim.[11]

### H. State Law Claims

### 1. NYSHRL Claims

### a. Notice of Claim

Before considering the merits of plaintiff's NYSHRL claims, the Court must address the County defendants' and DaSilva's argument that plaintiff's conceded failure to file a notice of claim with the County requires the dismissal of his NYSHRL claims. (*See* County Defs.' Mem., at 23–24; DaSilva Mem., at 22–25.)

### i. Legal Standard

State claims brought under state law in federal court are subject to state procedural

rules. *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 141 (1988). As such, New York County Law § 52 applies in this case and provides that

> [a]ny claim or notice of claim against a county . . . for damages arising at law or in equity . . . alleged to have been caused in whole or in part by or because of any misfeasance, omission of duty, negligence, or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. . . . Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

N.Y. County Law § 52(1). Section 52 incorporates the notice of claim requirements contained in New York General Municipal Law §§ 50-e and 50-i. Section 50-e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. Moreover, pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotations and citations omitted); *see Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such

---

[11] The Court need not consider the County defendants' argument concerning the timeliness of the Section 1986 claim.

a Notice of Claim, the complaint may be dismissed for failure to state a cause of action." (internal quotation omitted)). Accordingly, for the asserted state law claims, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99-CV-4087 (JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citation omitted).

### ii. Application

Plaintiff concedes that he has never filed a notice of claim in connection with the instant case. (*See* Pl.'s Opp'n, at 3–8.) Nonetheless, plaintiff contends that his NYSHRL claims should not be dismissed because (1) the notice of claim requirement does not apply to claims of employment discrimination, (2) defendants were on notice of plaintiff's claims even though plaintiff never filed a notice of claim, and (3) the notice of claim requirement does not extend to claims against individual defendants.[12] (*See id.*)

---

[12] At oral argument, plaintiff's counsel also cited *Freudenthal v. County of Nassau*, 726 N.Y.S.2d 116 (N.Y. App. Div. 2001), and *Kushner v. Valenti*, 285 F. Supp. 2d 314 (E.D.N.Y. 2003), for the proposition that the filing of a complaint with the EEOC (or with the New York State Division of Human Rights) satisfies the notice of claim requirement. Neither decision supports that argument. The Court of Appeals held in *Freudenthal* (in an opinion affirming the Appellate Division's decision) that a petitioner in an administrative proceeding before the New York State Division of Human Rights is "not required to file a notice of claim *as a condition precedent to administrative review of her complaint by the Division of Human Rights.*" *Freudenthal v. Cnty. of Nassau*, 99 N.Y.2d 285, 289 (2003) (emphasis added). *Freudenthal* has no bearing on the notice of claim prerequisite to filing a civil action in state or federal court. In *Kushner*, Judge Wexler held that a

The Court rejects plaintiff's first argument as a matter of law. The New York Court of Appeals has held explicitly that "[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court." *Mills v. Monroe Cnty.*, 59 N.Y.2d 307, 308 (1983). In particular, although the notice of claim requirement set forth in New York General Municipal Law §§ 50-e and 50-i applies only to torts and "does not apply in cases of employment discrimination brought pursuant to [the NYSHRL]," it is well established that New York County Law § 52(1) "has broader application than General Municipal Law § 50-e" and does apply to NYSHRL claims. *Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008) (citing cases); *see also Keating v. Gaffney*, 182 F. Supp. 2d 278, 291 (E.D.N.Y. 2001) (holding that N.Y. County Law § 52, which applies to claims against a county, "is a much broader statute than General Municipal Law § 50-e" and applies to employment discrimination actions). This Court finds this interpretation of New York County Law § 52 persuasive and likewise concludes that the notice of claim requirement set forth in that statute

---

plaintiff's EEOC filing satisfied the notice of claim requirement of New York Education Law § 3813. 285 F. Supp. 2d at 316–17. Consistent with other decisions interpreting *Kushner*, this Court does not find *Kushner* applicable to claims that are not brought under the New York Education Law. *See Rice v. Wayne Cnty.*, No. 09-CV-6391T, 2010 WL 4861556, at *4 (W.D.N.Y. Nov. 30, 2010) (limiting *Kushner* to claims brought under the New York Education Law); *Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 648 (E.D.N.Y. 2008) (same), *aff'd*, 345 F. App'x 717 (2d Cir. 2009).

covers employment discrimination claims brought under the NYSHRL.

Second, the Court cannot excuse plaintiff's failure to file a notice of claim in this case. This action, in which plaintiff seeks to vindicate his private interests, does not fit within the limited public interest exception. *See, e.g.*, *Feldman v. Nassau Cnty.*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) ("Plaintiff's allegations of discriminatory conduct on the part of the defendants refer solely to conduct that affects his interest in employment as a police officer. Since plaintiff seeks the enforcement of his private interests, the public interest exception to the notice of claim requirement is inapplicable." (internal citations omitted)), *aff'd*, 434 F.3d 177 (2d Cir. 2006). Moreover, a defendant's "actual notice" of plaintiff's state law claim does not excuse the failure to file a notice of claim. *See, e.g.*, *Olsen v. Cnty. of Nassau*, No. 05-CV-3623 (ETB), 2008 WL 4838705, at *2 (E.D.N.Y. Nov. 4, 2008) ("[T]he fact that the County may have received actual notice of the plaintiffs' claims herein through either their EEOC charges or the information discovered by the County during their investigation into those charges does not relieve plaintiffs of the requirement of serving a notice of claim upon the County in order to sustain their New York Human Rights Law claims."). A defendant's "actual notice" of the claim against it and "an absence of prejudice" may provide a basis for a court to grant leave to file a late notice of claim, *Brownstein v. Inc. Vill. of Hempstead*, 859 N.Y.S.2d 682, 686 (N.Y App. Div. 2008); however, New York General Municipal Law § 50-e(7) permits only certain *state* courts—"the supreme court or . . . the county court" in certain counties—to consider and to grant an application for an extension of time, N.Y. Gen. Mun. Law § 50-e(7); *see, e.g.*, *Henneberger v. Cnty. of Nassau*, 465 F.

Supp. 2d 176, 200 (E.D.N.Y. 2006) (citing cases). This Court does not have the power to grant such a request.

Third, plaintiff's assertion that the failure to file a notice of claim does not bar a claim against an individual defendant is incorrect as to claims against individuals sued in their official capacities, but correct as to claims against them in their individual capacities. The failure to file a notice of claim in this case does require the dismissal of plaintiff's claims against the individual defendants in their official capacities. *See, e.g.*, *Keating*, 182 F. Supp. 2d at 290 ("County officials, employees, or entities . . . are subject to the notice of claim provision as well."); *Anderson*, 558 F. Supp. 2d at 303 ("[T]he notice of claim requirements apply to the plaintiff's claims against Nassau County and the individual defendants acting in their official capacities."); *see also Pustilnik*, 2000 WL 914629, at *7 (E.D.N.Y. June 27, 2000) (dismissing state law employment discrimination claim against individuals who were "[c]ounty officials subject to the notice of claim provision"). As for a state law claim against an individual defendant in his individual capacity, "the requirements of Sections 50-e and 50-i are not conditions precedent to the commencement of an action against a county official or employee unless the county is required to indemnify such person," and "[t]he County's duty to indemnify these employees turns on whether they were acting within the scope of their employment." *Wharton*, 2013 WL 4851713, at *15 (internal citations and quotation marks omitted); *see, e.g.*, *Bielski v. Green*, 674 F. Supp. 2d 414, 428 (W.D.N.Y. 2009); *Grasso v. Schenectady Cnty. Pub. Library*, 817 N.Y.S.2d 186, 817–18 (N.Y. App. Div. 2006). Because plaintiff has raised a triable issue of fact as to whether DaSilva acted outside the scope of his employment in creating a hostile work environment,

plaintiff's failure to file a notice of claim does not require the dismissal of his NYSHRL claims against DaSilva. *See, e.g., id.* However, no reasonable jury could conclude that any other individual defendant, including Gruntorad, acted outside the scope of his or her employment, even though plaintiff accuses them of committing unlawful discrimination and retaliation. *Cf. Delaney v. City of Albany,* No. 12-CV-1575 LEK/RFT, 2014 WL 701637, at *6 (N.D.N.Y. Feb. 24, 2014) (noting that putative intentional torts of police officers may fall within scope of employment); *Rowley v. City of New York,* No. 00-CV-1793 (DAB), 2005 WL 2429514, at *12 (S.D.N.Y. Sept. 30, 2005). Accordingly, plaintiff's failure to file a notice of claim does require the dismissal of his NYSHRL claims against all individual defendants except DaSilva. *See, e.g., Crippen v. Town of Hempstead,* No. 07-CV-3478 (JFB)(ARL), 2009 WL 803117, at *16 (E.D.N.Y. Mar. 25, 2009) (dismissing claim against individual defendant for failure to file notice of claim where the claim against the individual defendant "relate[d] solely to his status as a [Town of Hempstead] employee, while he was acting within the scope of his employment").

For the reasons stated *supra,* the Court dismisses plaintiff's NYSHRL claims against the County, all individual defendants in their official capacities, and all individual defendants in their individual capacities except DaSilva, for failure to file a notice of claim.

### b. Merits

### i. Legal Standard

The standard that governs hostile work environment claims brought under Title VII also governs hostile work environment claims brought under the NYSHRL. *See,*

*e.g., Cruz,* 202 F.3d at 565 n.1 (explaining that the analysis of claims brought under the state human rights laws is the same as the analysis used in Title VII claims); *Collier v. Boymelgreen Developers,* No. 06-CV-5425 (SJ), 2007 WL 1452915, at *4 (E.D.N.Y. May 17, 2007) ("The Court's consideration of claims brought under [NYSHRL] . . . parallels the analysis used for Title VII claims."). Retaliation claims under the NYSHRL, like hostile work environment claims, are generally governed by the same standards as federal claims under Title VII. *See Schiano v. Quality Payroll Systems, Inc.,* 445 F.3d 597, 609 (2d Cir. 2006).

Unlike Title VII, however, "[i]ndividual liability is sometimes possible" under the NYSHRL. *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 377 (2d Cir. 2003). Specifically, "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYSHRL]" pursuant to NYSHRL § 296(6), which "states that it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995) (quoting N.Y. Exec. Law § 296(6)). Contrary to DaSilva's position, even a co-worker (*i.e.,* not a supervisor) may be held liable under NYSHRL § 296(6), as long as he actually participated in the conduct giving rise to the discrimination claim. *See Feingold,* 366 F.3d at 158 ("In *Tomka,* we found that this language allowed a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." (quoting *Tomka,* 66 F.3d at 1317)); *see also Cohn v. KeySpan Corp.,* 713 F. Supp. 2d 143, 160 (E.D.N.Y. 2010) ("The Second Circuit has held that individual liability may

be imposed under the NYSHRL on a co-worker who 'actually participates in the conduct giving rise to a discrimination claim,' irrespective of whether that coworker possessed the authority to do more than carry out personnel decisions made by others." (quoting *Feingold*, 366 F.3d at 157–58)).

### ii. Application

For the reasons discussed *supra*, plaintiff has raised a triable issue of fact as to whether DaSilva personally participated in the creation of a racially hostile work environment. Accordingly, the Court denies DaSilva's motion for summary judgment as to plaintiff's NYSHRL claim against him.

### 2. Breach of Contract

Finally, plaintiff asserts a breach of contract claim against the County and some of the individual defendants. He premises this claim upon the County's alleged breach of its equal employment policy. (*See* Pl.'s Opp'n, at 39–40.) However, under New York law, an employment handbook's anti-discrimination and anti-harassment policies may not serve as the basis for a breach of contract claim. *See, e.g.*, *Willis v. Verizon N.Y., Inc.*, No. 11-CV-5078, 2012 WL 2370125, at *6 (E.D.N.Y. June 22, 2012) (dismissing breach of contract claim based on employee handbook); *Abdi v. Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 229 (E.D.N.Y. 2006) ("An employer's general statements reiterating its obligation to abide by existing law concerning discrimination and equal employment do not serve as the basis for such a claim."); *Davis v. Oyster Bay-E.*, No. 03-CV-1372 (SJF)(JO), 2006 WL 657038, at *15 (E.D.N.Y. Mar. 9, 2006), *aff'd*, 220 F. App'x 59 (2d Cir. 2007) ("[I]t is equally well-established that an employer's anti-discrimination policies and manuals cannot serve as the basis for a breach of contract claim."); *Burger v. Litton Indus., Inc.*, No. 91-CV-0918 (WK)(AJP), 1996 WL 421449, at *22 (S.D.N.Y. Apr. 25, 1996) ("[T]he Equal Employment and Opportunity statements cited by Burger from Litton's employment manuals, rather than insuring a term of employment, simply establish general anti-discrimination principles. Such general statements of equal opportunity and nondiscrimination made in an employment handbook or manual cannot serve as the basis for a breach of contract action under New York law."), *report & recommendation adopted*, 1996 WL 609421 (S.D.N.Y. Oct. 22, 1996); *Blaise-Williams v. Sumitomo Bank, Ltd.*, 592 N.Y.S.2d 41, 42 (N.Y. App. Div. 1993) ("[W]e are simply dealing with a general statement of equal opportunity and nondiscrimination contained in an employee handbook. Such a general statement, which is nothing more than a statement of existing law concerning discrimination, may not serve as a basis for a breach of contract claim."). Accordingly, the Court grants summary judgment to all defendants on this claim.

### IV. CONCLUSION

For the reasons set forth herein, the Court grants in part and denies in part defendants' motions for summary judgment. In particular, the Court grants summary judgment to the NCSD as to all claims. As for the Title VII claims, the Court grants summary judgment for all individual defendants and denies the County's motion for summary judgment in all respects. As for the Section 1981 and Section 1983 claims, the Court grants summary judgment for all individual defendants except for Gruntorad, against whom plaintiff may pursue a retaliation claim, grants summary judgment for the County with respect to the retaliation claim, and denies the County's motion for summary judgment with respect to the

hostile work environment claim. The Court also grants summary judgment for the County and all individual defendants except DaSilva on plaintiff's NYSHRL claims. Finally, the Court grants summary judgment for all defendants as to the Title VI, Section 1985(3), Section 1986, and breach of contract claims.

SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 22, 2014
        Central Islip, NY

                *       *       *

Plaintiff is represented by Frederick K. Brewington, Law Offices of Frederick K. Brewington, 556 Peninsula Boulevard, Hempstead, NY 11550. All defendants except DaSilva are represented by Andrew Kenneth Preston, Deanna Darlene Panico, and Michael Paul Siravo of Bee Ready Fishbein Hatter & Donovan LLP, 170 Old Country Road, Mineola, NY 11501. Defendant DaSilva is represented by Justin C. Tan and John Francis McKay, III of Bond Schoeneck & King, PLLC, 1399 Franklin Avenue, Suite 200, Garden City, NY 11530.